Here ye, here ye, here ye. This Honorable Court of the 2nd Judicial District is now open for a suit to adjourn. The Honorable Mary Ann Shuster presides. You can be seated. Good morning. You know, there are three panel members. One of our panel members is unable to be with us today. That's Justice McLaren. So he will listen to the argument that is being taped, and then he will assist us in the decision on this case. Okay? Excuse me, may I have this? Yes. My name is Sean. This case on the docket 2-14-0645. Jane Meade, plaintiff, appellant. v. City of Rockford, defendant, appellee. Arguing for the appellant, Attorney Mary Kai Wood. Arguing for the appellee, Attorney Thani C. Malak. Ms. Wood, you may proceed. I mean, I'm not sure if the name tags are correct, but I'm Justice Shostek, Justice Hudson. Thank you. They are correct now. They fixed those. May it please the Court. I will first give a very brief procedural history from the standpoint of the settlement portion of this case. If the Court prefers, I can skip that. I think we're familiar with the facts. Okay. All right. Just the actual background. Okay. I'm here today to ask this Court to enforce the settlement agreement that was entered on January 24th, 2014, as a result of a pretrial settlement conference held before the 17th Judicial Circuit Court and memorialized in a settlement agreement dated February 10th, 2014. Ms. Wood, tell me how we can enforce this settlement agreement and how we could, or how do we ignore 3.1-4040 of the municipal code? How do we get past that? Okay. I think that the Wheeling Park District case is directly on point, and it's really the only case that is directly on point. Is it the Arnold? Wheeling Park District v. Arnold, yes. And although that's one of the first... I'm going to let you talk about Wheeling. Okay. Keep in mind when you talk about Wheeling, isn't that Park District code different, though, than the municipal code? It's slightly different, but I think that the language of the two statutes is similar enough that we can at least make an analogy. Well, let me just stop you right there at that point. Okay. Because it's similar because I believe Arnold said that it required a resolution to create a liability, and I think the Court in the First District got around that, held that the settlement was not a liability. But we're talking about a municipal ordinance that says, or statute says, it's also restricted for the expenditure or the appropriation of money. $600,000 to settle a case, isn't that an appropriation of money? Well, the municipal code also says to create a debt obligation claim or liability or for the appropriation of money. And I believe that, you know, I'm not privy to the city's accounting system, but I do believe that the legal fund is something separate from the general appropriation fund, where they would, for example, get the money to purchase city services. I think that the discussion in the Wheeling case is important, because they drew a distinction between settlement agreements versus contracts for other types of city services, and I think that's important in this case, too. Now, if you get past that, you have another hurdle with the Arnold case, and it probably turns on that, and that issue is not really dispositive. It seems to me very clearly that Arnold didn't pay fine, that the authority to settle it was specifically delegated to the individual who settled it. In here, is there any evidence in the record that the city council delegated specifically authority to settle this case? Well, I believe that that discussion, I think that that discussion was actually sort of a secondary issue that was brought up in response to an argument that was made as to whether or not the person who settled actually had authority, but I believe the court's decision turned on the difference between a settlement agreement, which does not create a new debt or liability, but settles an existing controversy versus a new debt. So if we don't buy into your argument on the settlement language, where does that leave you? You certainly are not asserting here that there was specific authority delegated in this case, correct? Well, I don't know that there was. Well, I do know that everyone thought that the city attorney had authority based on his statements to the trial court. And I can see that, and I can see how there was perhaps some misleading of the settlement parties, but I just want to establish for the record this is not a case where we're missing something. The city council did not expressly delegate authority to settle this case at the pretrial, did they? Well, I would say that they did. In writing? Not in writing, no. The five members of the Code and Regulation Committee of the city council were on the phone with the city attorney, and all five of them gave him authority to make this settlement offer, and this was the third settlement offer that he made that was finally accepted, and he can't do that without these five Code and Regulation Committee members telling him it's okay to do that. But they're not acting as the city council when they did that. They were acting as the city council as a whole. I think therein lies the whole issue in this case. But I do believe that the distinction between a settlement agreement versus a contract, other types of contracts, that is an important issue, and I believe that the municipal code section cited here governs contracts other than settlement agreements. One of my other points is that the city ordinance section 2-277 does govern settlement agreements, and all that requires is consent of the city council. There is no language in that ordinance that we know governs settlement agreements. There's no language. Doesn't this ordinance trump the city ordinance? Well, I don't think they're in conflict with each other, frankly, so I don't think one has to trump the other. It only requires the consent of the city council. Which I believe we had here, and I think that if they, and specifically it says for settlement of lawsuits. It's a law separate from the municipal code. I don't think they're at odds with each other. I think they govern two separate issues. Here's one of the things we always have to be concerned about. You have to look at the implications of a ruling in your favor. If you stretch the point and basically say these committee members, it was not a formal city council vote. If that is sufficient, what would prevent then in another case some rogue group of council people deciding to get together because they see a compelling need to settle a case and act without the full approval of the city council? How do we countenance that? Because basically if it went with your argument, we'd open the door to that possibility, wouldn't we? We'd say you no longer need a formal vote in compliance with the plain language of the state ordinance. You can have members binding the whole city council and the whole city. These five rogue members, not that they were here, but who go off without the authority of the whole city council. How do you guard against it if it's a rule in your favor? I think somebody went rogue here. Obviously, I'm not really sure. I'm not prepared to say who. But I think that the city council has these committees that are formed for a reason. And the code and regulation committees have always worked in concert with the city attorneys to settle lawsuits and to negotiate the settlement of lawsuits. I mean, to decide for the city would go against the city's own previous practices, and it would violate. That's another thing, counsel, and I think you raise an important point. You said that the city has done this before, and this is a practice of the city. But in reading the transcripts and reading your briefs, there's no evidence to show us, I mean, no solid evidence that this has been done before in this many situations or that even your office has done this in the past and named any situations in which this is done. It's just like a passing comment. This is the practice of the city, the custom and the practice of the city. Well, I think that the trial judge's commentary, you know, you can at least definitely infer that from his comments. He said on numerous occasions, everyone thought this was settled. Mr. Partridge's statements were unequivocal. We all thought there was a settlement. He made those phone calls to the council members. We all thought this was settled. This also, what happened here, runs contrary to the circuit rule, the local rule 11.03, which says that at pretrial settlement conferences before the court, you must have parties with settlement authority present in person or on the phone. And in this case, Jane Meade, my client, was present, you know, was available by phone. We had to take breaks and speak to our clients on the phone. The five City Council Code and Regulation Committee members were also present by phone. And Mr. Partridge spoke to them several times during this. The local rule goes a little further and defines settlement authority as people with authority to bind their client to a binding settlement agreement. I don't think there's any question that a lot of people would have been legitimately, I believe, shocked over what happened here. You go into the trial court, you're operating in good faith, there's ostensible apparent authority to settle the trial. Everybody left here thinking this case was over, right? Correct. And all of a sudden this bombshell comes later on, a clash between what the parties actually believe was correct and a clash between what the statute said. I think what she was trying to get at, though, is there's a couple of exceptions, I think, written into the very plain language by case law. One would be, and I think the Supreme Court talks about it, and there's no allegations here of some type of improper inducement or some type of a fraud. I don't think that's been pledged, so you don't get past that. What she's talking about is if there was evidence of a custom and practice of the city council deferring to the commission in other cases, and we don't mean anecdotal evidence, the trial, you know, if you would have brought in some evidence that this has been going on for a period of time, you might hang your head on that slender reed, but you don't really have that here, right? Well, Judge, that wouldn't be evidence in my control. I wouldn't have any evidence of what the Code and Regulation Committee did in other cases, and then, you know, how the vote came down. It's not that you couldn't have obtained that. I mean, there could have been, you probably could have attempted to find that. Well, it was certainly an argument that was raised, and the city didn't deny that that was the case. The city never denied that this is their custom and practice, and this was highly unusual. But how do we make a specific finding where there's no evidence that's been pled and proven? Well, I don't think that there's going to be any denial that this is the general procedure that the city follows in every case. Well, I think there is a denial. I think they are denying that this is the procedure. Well, what I'm saying by this is the procedure is we have a pretrial settlement conference before the court, and I think that Judge Prochaska talked about this during oral argument. Pretrial settlement conference, the city attorney is present. Any additional authority, he gets on the phone. He talks to the committee members, the Code and Regulation Committee members. He comes back. He makes an offer. The judge struck the trial from the calendar, which he said, I don't do that unless I know it's settled. You know, I think we're right there with you. I mean, there is nothing more frustrating than being a trial court judge and taking an hour or two or three or an afternoon to pretrial cases, to have them settle, to have everything signed, and then somebody come back in and say, oh, by the way, we're reneging on this contract. You know, I heard something on the radio today. They were talking about the whole thing with Israel, and they said, how do you negotiate with a liar? And I thought, you know, isn't that true? I mean, how now in the future is somebody going to negotiate with the city of Rockford? They're going to be very skeptical in negotiating with them. So I'm right on par with your argument. I don't disagree with it. I don't want to speak for Justice Hudson, but I don't think he disagrees with it either because we were both trial court judges, and it's frustrating. And I could see the frustration in the trial court judge here when he spoke. However, the obstacle you have to overcome and we have to overcome in order to rule in your favor is the municipal code and the statute, and that's what we're asking you questions about. It's incumbent upon you, the burden is on you to show us that this was indeed in fact the custom and the practice because that would allow you to get around 3.144. Well, I think that it's interesting to note that the trial judge actually said, hey, if all I was looking at was the municipal code, I think reeling is instructive here and I think I'd have to be bound by that. He was almost saying that the municipal ordinance 2-277 trumped that, and he couldn't get around that language. But I think consent, if the city had intended that you needed a full vote to approve a settlement of a lawsuit, they could have written that ordinance to say so. And I think there's a case in here, the Samson case, where the municipality in that case did just that. They incorporated the language of that municipal code into their lawsuit settlement statute, and I think the city could have done that if that was their intention. So your position is that the city code would trump the municipal code? Yes, because the city ordinance specifically says it relates to settlement of lawsuits. The municipal code says it's to create new debt or expenditures of money on the part of the city, and those are whole separate issues than settling an ongoing controversy. This case had been going on since 2009. This was not a new debt. This was not a new controversy. It was settling an ongoing litigation. There's a separate fund out of which that is paid, and the municipal code doesn't govern that. Well, let me ask you a very fundamental question, though. Can the city code trump state law? I don't think it has to because I think they're on two separate issues. The municipal code governs contracts formed for purchases of city services, for, you know, for the general expenditures that cities make. Yeah, but doesn't what are supposed to not exceed a certain amount, like $11,000 or something? The section 277 of the city ordinances says that you don't need a city attorney without getting any sort of consent, is the word that they use of the city council, can settle lawsuits under $12,500. For everything over that, they need consent, and I'm saying what they had here was consent. They had the word of five different, five code and regulation committee members who are city council members. They gave their consent. That was all that was required. So you want us to make a ruling that the five, you know, code members can speak for the whole city council? I don't believe that a vote of the full city council is required under the municipal code to settle an ongoing lawsuit. Nevertheless, you have no case law other than our own, which is fairly distinguishable that says that. I think that Armand is really very much on point. I think, I see my time is up. Can I finish? I think that the commentary about whether the park district director in Wheeling v. Arnold actually did or didn't have authority was sort of a side point. It was more like dicta, and I think that the court's ruling turned on the fact that a settlement agreement is different from a contract for the purchase of city services. Let me ask you one final question. Okay. Even if we don't find or don't buy your argument that the city code would trump the municipal code, let me ask you this. Were the committee members required to vote on the approval of the settlement agreement consistently with their previous approval at the pretrial settlement conference? They absolutely were, and that's another one of my arguments, is that those meet the definition of judicial admissions. The city council members can't do what, can't do indirectly what the city attorney would not be allowed to do directly, and that is act in contravention to those direct, clear, unequivocal statements in court in a settlement agreement to the court. Those are judicial admissions, and they're binding. Did you ever argue, and I don't know if you could maintain it in the case law, but did you ever argue some form of judicial estoppel? I argued the elements that the statements were clear, they were made in open court, they were made in a settlement document, the statements were unequivocal, and like a judicial admission. But you didn't plead judicial estoppel, did you? No, I pled the elements of judicial admissions that they are precluded from acting contrary to those statements they gave in court. I understand that. Why did you not plead judicial estoppel? Because I really, I thought that these elements were more on point. Well, essentially I pled that they were stopped from acting contrary to what the city attorney had represented in open court. It can't. You know, I didn't actually label it estoppel or admission, but I argued those elements. So I do believe they couldn't, they can't turn around and act contrary to the statements that they caused the city attorney to make. And do you have a case law that says they can't change the mind? Yes, I do. The Dremco case I think is right on point, and that involves actually a settlement agreement. In that case, it was a settlement agreement regarding property division. There was a preamble to the settlement agreement that talked about how this property that was going to be annexed, the defense attorney stated to the court his intention to annex the property consistent with what it said in the settlement agreement. He made that statement in court several times. He made the statement in written pleadings that he filed with the court and briefs that he filed with the court. And the court found that those were clear, unequivocal statements made in open court, and they were bound to follow them. So they enforced that. Who did those statements bind? They bound the parties. When the defendant said, no, I'm not really going to annex the property like it says in this settlement agreement, the court said, yes, you are. You made those statements in open court, and they're contained in your settlement document. But that wasn't a city council case, was it? It wasn't a city council case, no. But I still think we can look at that. I mean, the city, there has to be some standards for what you represent in open court. You have to, you know, I mean. Well, between private parties and even other organizations, contractually I think you're right. But again, we've been going all over the place. We're going to come back to the same place that we started the first question. You have the state law that sensibly requires the vote of the, quote, unquote, city council. Now, you can try and carve out exceptions, but you have to admit that is the language that you're trying to get around. So we have to find a way around that plain language. And I think the way around it is with the distinguishing between settlement agreements and other types of debts for city services. And I think that the way you reconcile how do we deal with the city from now on is by saying that whatever those city council code and regulation committee members tell the city attorney and cause him to say to the judge in open court, they're bound by that. They better not be trying to flip and change their votes later because those are judicial admissions. They have to vote consistently, and that's how we get around that. Now, is their behavior, do you think, sanctionable? Well, we did ask for that at the trial court. He wasn't willing to listen to that argument at that time, but we did ask for that. Yes. OK, thank you. Thank you. Mr. Good morning, Your Honor. May it please this court. I represent the city of property. If I may start with the point raised about the city's previous customs and practices, what I believe my friend was trying to infer was how the city goes about settlements, which is that city attorney obtains authority from the code and regulations committee. And then when it conducts negotiations, when a figure is agreed on, still go back with a number to the committee. The committee will approve and report the settlement to the full council, and then the full council will proceed to vote on that settlement, upon which it's not binding on the city. Let me ask you this. On that day that that settlement conference was had, and the attorneys walked away, did the attorney for the city or any of those five council members ever say to the judge, judge, this is conditioned upon an approval by the full city council? Yes, Your Honor. They did? I was there present, Your Honor. So I recall this being made that this, and that's the practice, that's a practice which I believe my friend was referring to, that these settlements, I made this an authority of the code and regulations committee, and also we make it clear that this is contingent on the city's full city council voting on the particular settlement. There are times in which you have the settlement negotiations in advance of trial. You have the time, you have the opportunity to obtain the full council vote before you get to trial. But when you are in a case like this, or just a few days before the trial, whatever negotiations that were conducted, whatever settlement proposed agreements that were reached were contingent on a full council still voting on that particular settlement. Let me ask you this. Obviously, she's not going to agree with that. But let's assume that we did not find that. Let's assume that we were to find that when all the parties left court that day, they thought it was a done deal and there was no further things to be undertaken. Would that, however, preclude, would that make the settlement agreement enforceable in light of the state law? It will not, Your Honor, because what we had at that time was the concurrence of a committee. And there's a difference between a committee and the entire city council. We have a committee of five members. However, we have 14 aldermen that constitute the entire city council. So the vote of five members cannot replace the majority vote of a council of 14 members. And that is particularly instructive. There is no, and then regarding the point about voting consistently with a vote in a committee, there's just no precedent for that. It may be a bit unsavory or unfortunate, but there's just no authority to say that a member of a legislative body must vote consistently regarding a particular issue at all possible times. Let me go back before Justice Hudson asked the question, after the question I asked you. You said that it was set on that day, this approval is, this settlement agreement is conditioned or contingent upon the approval of the full city council. Where in the record is that statement made? The statement was not made on the record. Where in any bystander's report is that statement made? There was no report. I just know that because that was their personal. Why, if the judge did not believe that a binding final settlement had been reached, why would he have removed it from the trial call? Because up until that time, just as I explained a few minutes ago, the practice has been that once we have this authority and this vote of members of the council. The five members. The five members that the previous previous experience in that they voted consistently when you get to the entire council. So on this particular day, I believe it was some plaintiff's lawyer that was on the city council that kind of derailed the whole thing. Is that true? I was not there at the city council, so I couldn't say for sure. Isn't that what the record shows? Well, there was a reference by the judge, maybe in particular all the rights being responsible, but I couldn't speak to that specifically. OK, so you're saying that this is done, has been done in the past, and each time it's been done in the past, the trial judge has taken it off of the trial call even before it's been approved by the full city council. Your Honor, as I said earlier, in most cases we get beyond the state before we get really close to trial. This is an issue here because we were facing trial a few days away. That's why this is particularly. Isn't that where most cases are settled, counsel? Historically, I'm adding statistically, that's when most cases are settled. However, in my experience, we try to settle these things before we get real close to trial so we don't run into issues of this nature. But that's where we found ourselves in this particular case. However, as I said, the five members who gave authority to the city attorney do not have the authority to bind the entire city council. So you're hanging your head on Section 3.1-4040 of the Illinois Municipal Code, which ostensibly says that. And she comes along and says, aha, that may be true, but we got this Wheeling v. Iron case that we hang our head on. And that makes us, our side, win the case because it trumps. It's a matter of statutory interpretation. We have this first district case. Therefore, we win. So why is the Wheeling v. Iron case not binding on us? We believe that the Wheeling case was a narrow decision. First, it's narrow. It speaks particularly to employment cases. This is the case where the board of the Park District Code, which we believe is inapposite with the municipal code. It does not guide the code at all. But even if you pass that hurdle, the fact is that the Park District Code specifically empowers the board to delegate power to hire and terminate employees. And it was in the exercise of that hiring and terminating employees that the resignation agreement was entered into. In that case, the Park District Director had the power to hire, to get into an agreement, to resolve most of these employment disputes. And here there was no delegation by the city council? Here there was no delegation. Here we have Section 2-277 of the City of Rockford Ordinance that says that for a settlement up to $12,500, the city legal director could enter into such settlement agreements. However, once it's above that figure, the consent of the city council is required. And, Your Honor, the issue of some ambiguity in the language between the Rockford Ordinance and the municipal code, we believe that it does not carry the weight that my friend wants it to carry or describes it to have. The concurrence of the majority vote and consent of the city council, they both have the same effect. It's just a stylistic choice. The Rockford City Ordinance makes references to consent, unanimous consent, and things of that nature. Now, she states that 2-277 should trump the municipal code. Why not? Your Honor, that just cannot be. Illinois is a non-home rule and can only exercise that power as given to us by the Illinois General Assembly. And although it's true that the Rockford Ordinance speaks specifically to settlement agreements, it's just inconceivable that the municipal code will be subject to that particular ordinance. In addition, the fact that in the Wheeling case, the park district acted in accordance with the agreement. They actually performed to show that they accepted. And although it's not clear in the decision of that court, you can see a ratification rationale because it's settled on Illinois that even if a municipal corporation or an employee or an official acts without the excess authority, but leaving the scope of what the municipal corporation could do, that the corporation can ratify that conduct subsequently. And that happened in Wheeling. In Wheeling, they paid out the funds to the particular employee who used those funds. And obviously that didn't happen here. That did not happen here. Let me ask you something that I had asked her. She was citing the case of Wheeling. The first district concluded that the relevant section 4.6 of the park district code did not apply to the case because, quote, the settlement agreement in Wheeling did not create a new debt obligation or liability. And that's similar to part of the Illinois Municipal Code section I cited where it says the passage of all ordinances are required where you're creating a liability against the city. But it also goes on to talk about or where there's an expenditure or appropriation of money. So doesn't that carve out another exception not in Wheeling? Because arguably the appropriation settlement would have created an expenditure or appropriation on the part of the city of Brockport to pay the settlement, correct? Correct. We believe that the municipal code and the park district code, et cetera, is inopposite. And here, although that you're going to focus on the expenditure, we also believe that if a settlement agreement is reached and the court ordered it and the city is unable to pay, that will also create a liability against the city. So either way, I don't think that the municipal code is such that it's not all encompassing. And even the first sentence of the relevant section of the municipal code talks about passage of all ordinances for whatever purpose. It's broad and of wide application. Resolution or motion, these are the three ways in which a municipal corporation can act or can show the direction it wants to go. So in any way possible, a majority vote is required. What about our argument about judicial admissions as trumping the statute? I think that a response to that would be I rely on the comments made by the trial judge at the motion hearing that the committee, the committee that supposedly authorized the city attorney to make an admission, did not have the authority to bind the city. And I think that is something that my friend could not really get out from. Why? Why weren't those five committee members? Why? Why should not they be required to vote consistently as they voted in the court at the time they approved the settlement? Your Honor, we spent time researching this and we just see no precedent for that where legislators are being mandated to vote in a particular way. These elected officials, they're supposed to vote in accordance with the mandate given to them by the electorate, their voters. If that's the rationale the court, the director of the court wants to go, but we just didn't find any support for that. The legislature being a coordinating arm of government has the power to act in any particular way. So to be blunt, is there a difference between a moral obligation and a legal obligation? You could express that in that way. But I don't think it's uncommon beyond this particular legislative body and other bodies to have a member of a legislative body to initiate a particular bill and then eventually vote against it because for some reason it changes its mind or something eventually. Well, they're not initiating the bill. They were in a courtroom, a court of law with a judge who took a good chunk of his day out to negotiate this case. They settled the case. Everybody signed the documents and then they go into city council and they succumb to some pressure of one alderman or whomever it was who felt that the settlement was too high. And instead of standing on their morals and their principles, they succumbed to the pressure. How is this right and how is anybody going to negotiate with the city of Rockford in the future if they can't trust and the judge can't trust the people who are standing before them? Should they be sanctioned? Should the city be sanctioned? Your Honor, I don't believe that. I'll tell you what, just as an aside, if I were the judge, I wouldn't do any pretrials with the city of Rockford anymore unless I had every single city council member in my courtroom sitting before me. I would sanction them. Do you think sanctions are proper here? Your Honor, I don't think that the vote and the way that members of the legislature conduct their business in that chamber is something that we just found no legal support for. Not the city council members in the chamber, the five that were sitting before the judge who sat there and settled the case and the attorney for the city of Rockford who settled the case and then come back and say, nope, we changed our mind. It's under 219. Don't you think that the court can sanction and if not, why not? Well, the defendant in this lawsuit is the city of Rockford. Correct. At that day in court, weren't they represented by those five members who went into the courtroom? Correct. They were represented by those five members. However, in order to be bound, a vote of the entire council is required. Where does it say that in the record or on a bystander's report? The city attorney that appeared, appeared ostensibly with, based on the local rules, is supposed to appear with the authority to enter into settlements. However, another angle which we have to admit is the fact that being a municipal corporation and the way they do business, there's a certain level of difficulty if you dispose of a trial and you have to get the council to vote on a particular issue. I take your point in your honor as to the frustration which the entire situation engendered. However, from a legal standpoint, there's just no legal support for either the sanction or legal support for proceeding against the aldermen individually. Do you have a further question? No. Thank you. You can wrap up if you'd like. Do you have a last statement to make or are you just, you're ready to sit down? We'll just ask that the court ask all the certified questions and the negative as we believe that there's no legal support for my transposition. Thank you. Thank you very much, counsel. If you could step back up. I'll be very brief. First of all, while I was sitting down, I refreshed my memory about exactly the language in Wheeling about whether the Park District had, whether the Park District Code granted authority to hire and fire employees. And if, I'm not suggesting you have to read the case now, but in paragraphs eight and nine, it's clear that that was the court's recitation of disputed facts. One side claimed, oh yes, the Park District Code grants us authority to hire and fire employees, so I didn't need, that's why we didn't need to vote. The next paragraph, paragraph nine says, no, you know, the other side, Arnold disagrees and says that that's not true. The Park District Code apparently has some broad language about running the Park District in an efficient manner, but it did not specifically say that the Park District Director can hire and fire employees. So that was the court's recitation of disputed facts. It really was based on the difference between the settlement and the, I'm sorry, go ahead. But in that case, isn't there a formal delegation of authority by the board to this person? That was disputed. And it all came, the decision came down to whether or not a settlement agreement was the same as the types of agreement covered by the Park District Code, i.e. the creation of new debt or obligation on the part of the city. That's why it's so similar to the municipal code at issue here. Isn't there a reason though that the municipal code is the way it is? I mean, requiring an approval of all members so that, I mean, isn't it inherent in that code to protect the taxpayer's money so that it takes an entire board or an entire unit of government to approve the spending of the taxpayer? Certainly. Doesn't that make sense? Yes, it certainly does. And I'm not, I'm not suggesting that in any way we should invalidate the municipal code. But I'm just saying settlement of ongoing lawsuits, that's a whole different issue not covered by the municipal code. And I would suggest it's in a whole different fund. The legal fund is not the general fund where the money comes out of to hire and fire or to take on city projects or to spend city money on various things. The legal fund is different. And that's why the settlement of ongoing lawsuits is so different from the creation of a contract to buy city services. I guess that's why I keep relying very strongly on the distinction that the, that the, that was made in the Wheeling v. Arnold case. Further, I was going to point out that despite the representation that there was some kind of contingency to this whole settlement, the release itself contained no contingency language whatsoever. And I think I cited in my brief, I won't, I won't go over that again, but the offer was made very clearly in consideration for dismissal of this lawsuit. And for $600,000, you know, the city, you know, the city will settle this case. The acceptance was Jane Bean's signature, notarized on the release. The release contained language that all parties are desirous of resolving this dispute. That was a meeting of the minds as to the intent to settle. All of the elements of the ballot contract were contained in that release. There was no contingency language whatsoever. And Judge Prochaska, I think that his statements were the clearest indication of at least his understanding of everyone's representations in court that day. And I think the report of the record of proceedings, pages 38 through 40, contains all of his statements where he says Mr. Partridge was unequivocal. He called all those city council members. He got their approval. He made, you know, everyone was clear. We all believe there was a settlement. It was unequivocal. I think that there was, you know, I think that that was clear. No one, there was no contingency language anywhere, not in the release, not in anything that was, that the judge at least understood was being said in court. Your opponent indicates there's, who are we going to, who is the trial court going to sanction? You know, he makes a good point. All the city council members, they weren't there. They didn't, these five members just went in there as far as their position is to attempt to settle this case. Who would be sanctioned? I think the city would be sanctioned. I think the city is the defendant. The city is the proper party. They were acting on the authority given to them by the city council members, but I think the city is the responsible party in the long run. And we did ask for interest on, we asked for either judgment to enter or interest, you know, retroactive to the time of the settlement, that in the form of a sanction. And I think the city would be the proper party. Anything other? I would just ask that you answer the certified questions in the affirmative and find that there was a valid and enforceable settlement agreement. Thank you. Folks, thank you so much for your arguments today. Thank you so much for your civility in these hearings. It's always appreciated. As I said, Justice McLaren, listen to the arguments. We will listen to the arguments. We will render decision in due course. The court is adjourned for the day. Thank you so much. Travel safely. Thank you.